1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   VALERIE CASHON, | Case No.: 1:19-cv-00671-JLT-SKO |
| 12                Plaintiff, | ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AGREEMENT |
| 13        v. | |
| 14   ENCOMPASS HEALTH REHABILITATION HOSPITAL OF MODESTO, LLC, et al., | (Doc. 24) |
| 15 | |
| 16                Defendants. | |

17

18        Valerie Cashon filed a lawsuit against her former employers, Encompass Health

19   Rehabilitation Hospital of Modesto, LLC and Encompass Health Corporation in state court.

20   Initially, Plaintiff asserted individual claims related to her employment.  (Doc. 1-1 at 28 (original

21   complaint in notice of removal).)  Subsequently, plaintiff filed an amended complaint in state

22   court and then served Defendants.  (*Id.* at 10; Doc. 1 ¶ 2.)  Defendants removed the action to this

23   Court under the court's diversity jurisdiction.

24        Pending before the court is Plaintiff's motion for preliminary approval of the class-action

25   settlement agreement, which also includes a request to file a second amended complaint.  (Doc.

26   24.)  The proposed second amended complaint converts some of Plaintiff's individual claims into

27   class claims and leaves others—namely, those claims relating to retaliation—as individual claims.

28   In an earlier order, the Court noted Plaintiff's briefing was inadequate and ordered supplemental

1  briefing.  (Doc. 27.)  Plaintiff filed supplemental briefing on some points on November 19, 2021

2  but stated she needed more time to determine the maximum value of her claims.  (Doc. 35.)

3  Plaintiff filed an addendum about the value of her claims on December 3, 2021.  (Doc. 36.)

4  Defendants have not filed any opposition.

5  **BACKGROUND**

6  In her proposed second amended complaint (Doc. 25, Ex. D to Ex. 1 ("SAC")),[1] Plaintiff

7  alleges that she was employed by Defendants as an Occupational Therapist from November 19,

8  2016 to November 18, 2018, at which time she was unlawfully terminated.  During her

9  employment, Defendants violated number of aspects of the California Labor Code, by (1) failing

10  to provide meal breaks, (2) failing to provide rest breaks, (3) failing to pay all wages due on

11  termination, (4) failing to furnish accurate itemized wage statements, (5) failing to pay overtime,

12  (6) failing to pay the minimum wage, (7) failing to indemnify employees for business expenses,

13  and (8) violating the California Business and Professions Code.  For those eight claims, brings a

14  class-action suit under California Private Attorneys General Act ("PAGA"), pursuant to

15  California Labor Code § 2699.3.  Plaintiff also brings three individual claims that allege unlawful

16  retaliation under state law.

17  Plaintiff now seeks preliminary approval of the settlement agreement (Doc. 25, Ex. 1

18  ("Agreement")) that she reached with Defendants.  The Agreement provides for a $400,000

19  settlement for the class in exchange for a release, as described more below.  (*Id.* ¶ 1(z).)  That

20  $400,000 "is the maximum possible amount that may be paid by Defendants to resolve this

21  Action, with the sole exception of an additional payment to Plaintiff in the amount of [$50,000] in

22  connection with her separate individual settlement agreement and general release of all claims."

23  (*Id.*)  The class is defined as "All persons who have worked for defendants Encompass Health

24  Rehabilitation Hospital of Modesto, LLC and/or Encompass Health Corporation as non-exempt

25  employees in the State of California at any time during the Class Period."  (*Id.* ¶ 1(e).)  The Class

26  _____

27  [1]  The motion requests leave to file the SAC.  Because the Court is denying the motion, it is
unclear whether Plaintiff will still want to file the SAC as the operative complaint in this action.
Should Plaintiff seek to make that complaint operative, she may file a separate motion for leave to

28  amend the complaint.

2

1    Period runs from January 31, 2015 to the date the Agreement receives preliminary approval.  (*Id.*

2    ¶ 1(f).)

3            Finding the initial briefing inadequate, the Court ordered Plaintiff to provide supplemental

4    briefing.  (Doc. 27 at 3 ("Here, the court lacks sufficient information to perform the required

5    analysis.").)  The order listed several examples of the types of issues the briefing did not address

6    and highlighted several potential inadequacies in the Agreement.  (*Id.* at 2–3.)  It also directed

7    Plaintiff to several recent "decisions that indicate the depth the court undertakes for this analysis"

8    to point Plaintiff in the right direction.  (*Id.* at 2 n.1.)  Plaintiff's filed supplemental briefing

9    limited only to the specific examples listed.  (*See* Doc. 35.)

10                                         **LEGAL STANDARD**

11   **A.      Rule 23 Settlements**

12           Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

13   certified class—or a class proposed to be certified for purposes of settlement—may be settled,

14   voluntarily dismissed, or compromised only with the court's approval."  "Courts have long

15   recognized that settlement class actions present unique due process concerns for absent class

16   members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)

17   (internal quotation marks and citations omitted).  To protect the rights of absent class members,

18   Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on

19   finding that it is fair, reasonable, and adequate . . ."  Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*,

20   654 F.3d at 946.  But when parties seek approval of a settlement agreement negotiated before

21   formal class certification, "there is an even greater potential for a breach of fiduciary duty owed

22   the class during settlement."  *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such

23   agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest

24   than what is normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d

25   1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564

26   U.S. 338 (2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

27           Review of a proposed class action settlement ordinarily proceeds in three stages.  *See*

28   MANUAL FOR COMPLEX LITIGATION (4th) § 21.632.  First, the court conducts a preliminary

                                                   3

1   fairness evaluation and, if applicable, considers class certification.  *Id.* (noting that if the parties

2   move for both class certification and preliminary approval, the certification hearing and

3   preliminary fairness evaluation can usually be combined).  Second, if the court makes a

4   preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms,

5   the parties are directed to prepare the notice of certification and proposed settlement to the class

6   members.  *Id.*  Third, the court holds a final fairness hearing to determine whether to approve the

7   settlement.  *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267

8   (9th Cir. 2010).

9       "In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth

10  specific factors to consider in determining whether a settlement is 'fair, reasonable, and

11  adequate.'"  *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P.

12  23(e)(2) (effective Dec. 1, 2018).  In considering whether "the relief provided for the class is

13  adequate," the court must consider:

14          (i)  the costs, risks, and delay of trial and appeal;
            (ii)  the effectiveness of any proposed method of distributing relief to the
15          class, including the method of processing class-member claims;
            (iii)  the terms of any proposed award of attorney's fees, including timing
16          of payment; and
            (iv)  any agreement required to be identified under Rule 23(e)(3)[.]
17

18  Fed. R. Civ. P. 23(e)(2)(C); *see Briseño*, 998 F.3d at 1023–24.

19      Federal courts generally find preliminary approval of the settlement and notice to the

20  proposed class appropriate if "the proposed settlement appears to be the product of serious,

21  informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

22  preferential treatment to class representatives or segments of the class, and falls within the range

23  of possible approval."  *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL

24  558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp.

25  2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011);

26  *Briseño*, 998 F.3d at 1027–28 ("The district court thus should give a hard look at the settlement

27  agreement to ensure that the parties have not colluded at class members' expense.").  "The court

28  need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie

4

1   the merits of the dispute.'"  *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)

2   (quoting *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th

3   Cir. 1982)).  Rather, the court should weigh, among other factors, the strength of a plaintiff's

4   case; the risk, expense, complexity, and likely duration of further litigation; the extent of

5   discovery completed; and the value of the settlement offer.  *Id.*

6   **B.      PAGA Settlements**

7            Under PAGA, an aggrieved employee[2] may bring an action for civil penalties for labor

8   code violations on behalf of himself and other current or former employees.  Cal. Lab. Code

9   § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

10  enforcement agencies."  *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009).  Accordingly, a

11  judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who

12  would be bound by a judgment in an action brought by the government."  *Id.*; *see also Iskanian v.*

13  *CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized

14  to bring an action on behalf of an individual or in the public interest, and a private person lacks an

15  independent legal right to bring the action, a person who is not a party but who is represented by

16  the agency is bound by the judgment as though the person were a party.").

17           The PAGA statute imposes limitations on litigants.  First, because a PAGA action

18  functions as a "substitute" for an action brought by the state government, a plaintiff suing under

19  PAGA is limited to recovery of civil penalties only, rather than damages or unpaid wages

20  available privately through direct or class action claims.  *Iskanian*, 59 Cal. 4th at 381; *ZB, N.A. v.*

21  *Superior Ct.*, 8 Cal. 5th 175 (2019).  Second, to bring an action under PAGA, an aggrieved

22  employee must first provide written notice to the LWDA as well as to the employer.  Cal. Lab.

23  Code § 2699.3(a)(1).  Third, any civil penalties recovered must be divided 75 percent with the

24  LWDA and 25 percent with the aggrieved employees.  *Id.* § 2699(i).  Finally, the proposed

25  settlement must be submitted to the LWDA and a trial court must "review and approve" any

26  settlement of PAGA claims.  *Id.* § 2699(l)(2).  Although there is no binding authority setting forth

27  _____

28  [2]  An "aggrieved employee" is "any person who was employed by the alleged violator and against
    whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).

5

1   the proper standard of review for PAGA settlements, in the class action context where PAGA

2   claims often appear, courts must independently determine that a proposed settlement agreement is

3   "fundamentally fair, adequate and reasonable" before granting approval.  *See In re Heritage Bond*

4   *Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).  The determination of fairness, reasonableness, and

5   adequacy may involve a balancing of several factors including but not limited to the following:

6   the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further

7   litigation; the amount offered in settlement; the extent of discovery completed, and the stage of

8   the proceedings; and the experience and views of counsel.  *Officers for Just.*, 688 F.2d at 625.

9        The LWDA has also provided some guidance regarding court approval of PAGA

10   settlements.  In a case where both class action and PAGA claims were covered by a proposed

11   settlement, the LWDA stresses that

12
13           when a PAGA claim is settled, the relief provided for under the PAGA
           [must] be genuine and meaningful, consistent with the underlying purpose
           of the statute to benefit the public and, in the context of a class action, the
14           court [must] evaluate whether the settlement meets the standards of being
           "fundamentally fair, reasonable, and adequate" with reference to the
15           public policies underlying the PAGA.

16   California Labor and Workforce Development Agency's Comments on Proposed PAGA

17   Settlement ("LWDA Letter"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D.

18   Cal. July 29, 2016) (Doc. No. 736 at 2–3);[3] *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp.

19   3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA Letter with approval).

20        Recognizing the distinct issues presented by class actions, the Court is persuaded by the

21   LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the

22   PAGA portion of the settlement now before the court.  *See, e.g.*, *Tenorio v. Gallardo*, No. 1:1-cv-

23   00283-DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sept. 30, 2019); *Patel v. Nike Retail*

24   *Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

25   Accordingly, the court will approve a settlement of PAGA claims upon a showing that the

26

27   _____

   [3]  In the LWDA Letter, the LWDA also stated that it "is not aware of any existing case law
   establishing a specific benchmark for PAGA settlements, either on their own terms or in relation
28   to the recovery on other claims in the action."

settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.

**ANALYSIS**

Before giving notice to the class, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This order focuses on whether the Court will likely be able to approve the settlement under Rule 23(e)(2).

Under Rule 23(e)(2), a court may approve a class action settlement only if the settlement is a fair, reasonable, and adequate resolution of a bona fide dispute. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dall. Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). Preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

1. Procedural Fairness

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arms-length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). One sign of collusion is a clear-sailing arrangement, whereby "defendants agree[] not to object to an award of attorneys' fees," which "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]" *Bluetooth*, 654

1    F.3d at 947 (internal quotation marks and citations omitted); *accord Campbell v. Facebook, Inc.*,

2    951 F.3d 1106, 1127 (9th Cir. 2020) ("The concern with a 'clear sailing' arrangement is that class

3    counsel may have obtained too little for the class 'in exchange for red-carpet treatment on fees.'"

4    (quoting *id.*))

5         Here, there are indications of both arms-length bargaining and collusion.  Plaintiff's

6    counsel represents that "[a]fter nearly two years of litigation, the parties attended mediation with

7    mediator Louis Marlin on February 3, 2021.  As a result of mediation, the parties agreed to

8    resolve Plaintiff's representative claims as a class action settlement based on Plaintiff's PAGA

9    allegations and entered into the" Agreement.  (Doc. 24 at 2.)  The presence of a mediator is a

10   helpful sign.  However, four other facts point to collusion.

11        First, the fact that the class-action nature of this case only arose during mediation of

12   plaintiff's individual claims, does not bode well.  Rather, it appears plausible that the class-action

13   claims were an afterthought to achieve a settlement of Plaintiff's individual claims.

14        Second, there are five clear-sailing arrangements within the agreement whereby the

15   parties agree "not to oppose" others' actions:  Plaintiff will not oppose Defendants utilizing the

16   blow-up provision and Defendants will not oppose various fee and enhancement requests Plaintiff

17   and her counsel intend to make.  (Agreement ¶¶ 12, 18(a)–(d).)

18        Third, there was no class discovery before the mediation.  The Court's order for

19   supplemental briefing noted that it was unclear the extent to which discovery had been completed.

20   (Doc. 27.)  In her supplemental briefing, Plaintiff argued that she conducted extensive written

21   discovery about her *individual* PAGA claims when pursuing the claim as an individual and then

22   received class-specific information during mediation:

23            This [Plaintiff-specific] discovery provided Plaintiff with sufficient
             statistical information to evaluate her PAGA claims for purposes of
24            mediation.  The prospect of a class settlement based on Plaintiff's PAGA
             claims arose during mediation, during which Defendants, though the
25            mediator, Louis Marlin, provided Plaintiff with statistical data relevant to
             the class claims.  In light of mediation confidentiality, Defendants agreed
26            to provide this data following the conclusion of mediation, which they
             have done.

27

28   (Doc. 35 at 2–3.)

8

Fourth, the information Defendants provided might not have been entirely sufficient to calculate the value of Plaintiff's claims.  In its order for supplemental briefing, the Court also required briefing about the maximum possible value of Plaintiff's claims.  Plaintiff was unable to do so before the supplemental briefing was due because her counsel was "sidelined from representation for a period of two weeks when another attorney from another firm sought to replace Plaintiff's counsel as attorney of record." (*Id.* at 3.)  In her addendum to the supplemental brief that valued her claims, the valuation was based on "data Defendants provided at mediation and subsequently confirmed thereafter," (Doc. 36 at 2), indicating that Plaintiff did not have the full panoply of data when engaging in a mediation.  This raises the question of whether the "statistical information" Plaintiff was given at mediation was sufficient for her to analyze the value of the class claims before reaching the settlement.

Fifth, Plaintiff will receive an additional $50,000 to settle this action.  (Agreement ¶ 1(z).)  Presumably, that amount should reflect only the amount she will receive for her individual retaliation claim, but that is not made clear in the briefing.  When a named plaintiff is to receive a large additional sum to settle individual claims, it raises the possibility that the plaintiff allocated amounts to settle the individual claims that should have gone to the class.  *See* Fed. R. Civ. P. 23, Advisory Cme. comments to 2003 amendment (requirement for settling parties to identify side agreements "aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."); 4 *Newberg on Class Actions* § 13:55 (5th ed.) ("such 'side agreements' may shed light on whether the class's interests were subordinated to some third-party interests").  The Court is troubled by the fact that this amount was apparently reached simultaneously with the settlement of the class's claims.  Though Plaintiff offered to file her separate agreement under seal after the Court requested information about it, Plaintiff did not file a motion for leave to do so as required by Local Rule 141.[4]

In sum, the parties attended mediation nearly two years after Plaintiff first filed suit.  At

_____

[4]  The Court is not presently deciding whether such agreements may be filed under seal.

that mediation, the idea of settling a class-action at the same time was first raised. At that time,

Defendants provided Plaintiff with some "statistical information" about the class, which was the

first and only time Plaintiff conducted class discovery before reaching a settlement. With the

class-action included, the parties agreed then to settle the entirety for $450,000. Of that amount,

$50,000 will go to Plaintiff in a separate settlement agreement. The remaining $400,000 will go

to the class—aside from the $142,000 that Plaintiff and her counsel will seek (and Defendants

will not contest) for fees, costs, and enhancements for themselves. On these facts, the Court has

substantial concerns about whether "the class representatives and class counsel have adequately

represented the class," Fed. R. Civ. P. 23(e)(2)(A), and "the proposal was negotiated at arm's

length," *id.* 23(e)(2)(B).

### 2. Substantive Fairness

#### a) Adequacy of Settlement Amount

To evaluate the fairness of the settlement award, the court should "compare the terms of

the compromise with the likely rewards of litigation." *See Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-

settled law that a cash settlement amounting to only a fraction of the potential recovery does not

per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Lit.*, 213 F.3d 454,

459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible

approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

expected recovery balanced against the value of the settlement offer." *Tableware Antitrust Litig.*,

484 F. Supp. 2d at 1080.

Plaintiff represents that "the maximum value of the class claims, in the aggregate, is

$2,694,290. Of that amount, $2,217,639 constitutes the maximum value of the derivative claims,

i.e., the claims for waiting-time penalties and inaccurate wage statements." (Doc. 36 at 3.)

Hence, Plaintiff values the non-derivative claims at $476,651. Thus, the $400,000 settlement

figure "equates to approximately 15% of the maximum value of all claims, or approximately 84%

of the non-derivative claims." (*Id.*) Plaintiff's rationale for providing any discount is that

"continued litigation presents a serious risk, e.g., that a trier of fact finds that Plaintiff and the

1  putative class members were not misclassified as exempt employees or that Defendants properly

2  calculated their overtime rates."  (Doc. 24 at 19.)  Plaintiff's counsel averred that the settlement

3  was fair, adequate and reasonable.  (Doc. 25 ¶ 9.)

4        These markdowns are not inherently unreasonable, particularly if one considers only the

5  non-derivative claims.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA

6  (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15

7  percent found to be preliminarily fair).[5]  However, courts considering class-action settlements

8  "generally must weigh: (1) the strength of the plaintiff's case; [and] (2) the risk, expense, and

9  likely duration of further litigation . . ."  *Bluetooth*, 654 F.3d at 946.  But Plaintiff has provided no

10  real information about the strength of the case or the risk, expense and likely duration of further

11  litigation.  Plaintiff's *pro-forma* explanation is inadequate, particularly considering the Court's

12  concerns about collusion.

13        The Court also notes, as it did in its previous order, that it is concerned with the fact that

14  payroll taxes will be paid out of the settlement amount.  The true settlement amount is therefore

15  under $400,000.  The Court does not know how much will be paid in payroll taxes, so it cannot

16  fully evaluate the adequacy of the amount.  Thus, the Court cannot conclude on the present record

17  that the amount is within the range of possible approval.

18              *b)    Attorneys' Fees*

19        When a negotiated class action settlement includes an award of attorneys' fees, the fee

20  award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312

21  F.3d 1123, 1126 (9th Cir. 2002); *see* Fed. R. Civ. P. 23(e)(2)(C)(iii) (considering "the terms of

22  any proposed award of attorney's fees, including timing of payment" in determining whether a

23  proposed settlement is "fair, reasonable, and adequate").  At the same time, the court "ha[s] an

24  independent obligation to ensure that the award, like the settlement itself, is reasonable, even if

25  _____

26  [5]  However, it would be inappropriate to consider only the non-derivative claims in this analysis,
    particularly because the scope of the release includes the derivative claims.  *See Belew v. Brink's,*

27  *Inc.*, 721 F. App'x 734, 735 (9th Cir. 2018) (finding abuse of discretion to approve stipulation of
    class-action settlement agreement with overbroad release because release included claims that

28  parties agreed had no value).

the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999); *Briseño*, 998 F.3d at 1024 ("[T]he new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members."). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citations omitted). The district court retains discretion in common fund cases to choose either method. *Id.* Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage-of-the-fund method, a awards class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a 25 percent award is the "benchmark" percentage for attorneys' fees. *See Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). An explanation is necessary when the district court departs from the 25 percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

Plaintiffs bring various state law claims and, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted).

The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

The Agreement provides that class counsel may seek an award of up to $120,000, which is 30 percent of the settlement amount, and that Defendants will not oppose that amount. (Agreement ¶ 18(a).) Plaintiff does not appear to argue that the amount is reasonable and does not provide a lodestar cross-check. Not only is it above the 25% benchmark, but it is likely that a lodestar cross-check would render this unreasonable. This case was not filed as a class-action, the operative complaint is still not in the form of a class action, and the work counsel performed for the class itself *began* at the successful mediation. Even if that mediation took all day, and that day lasted 12 hours and counsel spent another 18 hours finalizing the settlement agreement, counsel's hourly wage for class-specific work would be about $4,000.[6] That is not a reasonable hourly rate. Accordingly, on the current record, the Court finds that it is unlikely to grant the attorneys' fees requested.

c)    *Enhancement Awards*

Though incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the

---

[6] $120,000 ÷ (12 hours + 18 hours) = $4,000 / hour.

1    class, the degree to which the class has benefitted from those actions, . . . the amount of time and

2    effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace

3    retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.

4    1998)).

5         Plaintiff seeks an enhancement up to $12,000.  (Agreement ¶ 18(c).)  It is unclear what

6    actions Plaintiff took, if any, to merit that award.  Plaintiff did not file a declaration about her

7    efforts. Based on the briefing, it appears that the class-action case was an offshoot of her

8    individual claims and were opened and settled at the mediation.  Therefore, it does not seem

9    likely that she took many actions or spent much time to protect the class's interests.

10                        *d)      Release of Claims*

11        "A settlement agreement may preclude a party from bringing a related claim in the future

12   even though the claim was not presented and might not have been presentable in the class action,

13   but only where the released claim is based on the identical factual predicate as that underlying the

14   claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

15   Thus, a defendant "is entitled to no more than the release of the claims class members asserted or

16   could have asserted in the operative complaint against defendant." *City of Long Beach v.*

17   *Monsanto Co*., No. CV 16-3493 FMO (ASX), 2020 WL 7060140, at *3 (C.D. Cal. Nov. 25,

18   2020) (citing *id.*).  "Beyond the value of the settlement, courts have rejected preliminary approval

19   when the proposed settlement contains obvious substantive defects such as overly broad releases

20   of liability." *Id.* at *2 (quoting *Newberg on Class Actions* § 13:15).

21        As part of the settlement, the class members agree to release Defendants and their

22   affiliates of the following:

23              Any and all claims, actions, demands, causes of action, suits, debts,
                obligations, damages, rights or liabilities that have been asserted by
24              Plaintiff, or the Class Members . . . **arising out of any claims that were
                encompassed in the Action, and** any claims which **reasonably flow**
25              **from** the facts alleged in **Plaintiff's Complaint, First Amended
                Complaint for Damages and Penalties, and/or Second Amended**
26              **Complaint** including, but not limited to: [specified claims].  Released
                Class Claims include all claimed or unclaimed . . . remedies available at
27              law or equity allegedly owed or available to the Class **arising or
                reasonably flowing from the Complaint, First Amended Complaint**
28              **for Damages and Penalties, and/or Second Amended Complaint**

1       **against the Released Parties** for the time period from January 31, 2015

2       up to and including the date of preliminary approval of the settlement.

3 (Agreement ¶ 14 (emphases added).)

4       Three aspects of this release are problematic. First, the class's release includes claims that

5 Plaintiff brought on her own behalf and not in a representative capacity. (*Id.* (releasing claims

6 "arising out of any claims that were encompassed in the Action.").) Second, it releases claims

7 from the original complaint and first amended complaint, but the SAC would render those

8 complaints inoperative. *See City of Long Beach*, 2020 WL 7060140, at *3 (a defendant "is

9 entitled to no more than the release of the claims class members asserted or could have asserted in

10 the operative complaint against defendant."). Finally, the release purports to include claims that

11 are "arising out of any claims that were encompassed in the Action" or that "reasonably flow

12 from the facts alleged" in the complaints. The Ninth Circuit has held that releases cover claims

13 only if they have an "identical factual predicate as that underlying the claims in the settled class

14 action." *Hesse*, 598 F.3d at 590.

15       Some courts have approved releases that of claims "arising" from the facts in a complaint.

16 *See, e.g., Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *10

17 (N.D. Cal. Dec. 17, 2015) ("As the release is limited to claims arising from the events alleged in

18 Plaintiff's SAC, the Court finds it is reasonable."); *Angell v. City of Oakland*, No. 12-cv-00190

19 NC, 2015 WL 65501, *7 (N.D. Cal. 2015) ("While the scope of the release in the revised

20 settlement agreement is still broad, it is acceptable because the claims released are limited to

21 those 'against the Defendants, their agents, and their employees arising from the events alleged in

22 Plaintiffs' Complaint.'"); *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015) ("In class action

23 settlements, parties may release not only the very claims raised in their cases, but also claims

24 arising out of the 'identical factual predicate.'"). However, the Court did not find, in its research,

25 cases interpreting releases of claims that arise out of any *claims* or "*reasonably flow* from the

26 facts alleged" in a class-action complaint. While it is possible that the release may still be

27 approved with that type of language, the Court advises the parties to prepare to brief this matter if

28 they use identical language in a future settlement agreement.

1

**C.      Proposed Class Notice and Administration**

2

For proposed settlements under Rule 23, "the court must direct notice in a reasonable

3

manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see*

4

*also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

5

under Rule 23(e)."). For a class certified under Rule 23(b)(3), the notice must contain, in plain

6

and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the

7

class claims, issues, or defenses; (4) that a class member may appear through an attorney if

8

desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for

9

requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.

10

Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally

11

describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

12

investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

13

575 (9th Cir. 2004) (internal quotation marks and citations omitted).

14

The class notice contains at least the following problems:

15

•      It includes the wrong address of the courthouse on several occasions. It should

16

include the address for the Fresno Division, not the Sacramento Division.

17

•      The case number has since changed.

18

•      The period for opting out or objecting should be longer than 30 days.

19

•      There is no need to serve any objections on opposing counsel and the administrator

20

because the objections will be placed on the docket and counsel will then receive

21

electronic notices of the objections. Complicating the objection methodology, would serve

22

to discourage objections.

23

**D.      Other Assorted Deficiencies**

24

Though the Court will not undertake a full analysis of these issues, it notes several other

25

deficiencies with the Agreement that the parties may wish to address if they reach another class-

26

action settlement.

27

1.      <u>Adequacy of Representative and Typicality of Claims</u>

28

Plaintiff alleges that she and "other similarly situated employees" were misclassified as

16

1    exempt, salaried employees.  (SAC ¶ 9.)  However, the class definition includes all non-exempt

2    employees.  (Agreement ¶ 1(e).)  Thus, it appears that Plaintiff would not be a proper class

3    representative as it currently stands.

4                    2.      Anti-Suit Injunction

5            The Agreement requires Plaintiff to request a court order "[e]njoining the Class

6    Representative and all Class Members from filing or prosecuting any claims . . . **regarding**

7    claims released by the Settlement unless such individuals have submitted valid Requests for

8    Exclusion to the Settlement Administrator."  (Agreement ¶ 22(f) (emphasis added).)  Because

9    claims "regarding" the released claims is broader than the released claims themselves, the Court

10   is unlikely to provide that relief.  *See Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d

11   942, 949–50 (C.D. Cal. 2020) (denying final approval on account of overly broad release in the

12   form of covenant not to sue; covenant included claims "arising out of any of the Released

13   Claims" because that "could capture claims that go beyond the scope of the allegations in the

14   operative complaint," particularly given "the expansive interpretations that courts give to phrases

15   such as . . . 'arising out of'" (some internal quotation marks and citations omitted)).  In addition,

16   if the parties intend to include such a provision in the future, they will need to justify it.  *See* 6

17   *Newberg on Class Actions* § 18:48 (5th ed.) (noting the problems with a judgment as a basis for

18   an anti-suit injunction).

19                   3.      Class Counsel's Obligations to Class

20           The Agreement requires "Class Counsel . . . not to take any action or make any statements

21   to encourage any Class Members to object to the Settlement."  (Agreement ¶ 10.)  Agreeing not

22   to give certain advice to a client's conflicts with the requirement for adequate representation and

23   implicated the duty of loyalty.

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2       The Court finds that it is unlikely to grant approval under Rule 23(e)(2) for the reasons set

3   forth above.  Accordingly, Plaintiff's motion for preliminary approval of the class-action

4   settlement (Doc. 24) is DENIED, without prejudice.

5

6   IT IS SO ORDERED.

7       Dated:   **January 9, 2022**

UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28