UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE CASHON,<br><br>            Plaintiff,<br><br>     v.<br><br>ENCOMPASS HEALTH REHABILITATION HOSPITAL OF MODESTO, LLC, et al.,<br><br>            Defendants. | No. 1:19-cv-00671-SKO<br><br>**ORDER DENYING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION**<br><br>(Doc. 42) |

Plaintiff Valerie Cashon filed a lawsuit against her former employers, Defendants Encompass Health Rehabilitation Hospital of Modesto, LLC and Encompass Health Corporation (collectively, "Defendants") in state court. Initially, Plaintiff asserted individual claims related to her employment. (Doc. 1-1 at 28 (original complaint in notice of removal).) Plaintiff subsequently filed an amended complaint in state court and served Defendants. (*Id*. at 10; Doc. 1 ¶ 2.) Defendants removed the action to this Court on the basis of diversity jurisdiction. (*See* Doc. 1.)

Pending before the Court is Plaintiff's renewed motion for preliminary approval of a class action settlement and provisional certification filed on November 14, 2022. (Doc. 42.) The motion also includes a request to file a second amended complaint, which converts some of Plaintiff's individual claims into class claims and leaves others—namely, those claims relating to retaliation—

1

as individual claims. (Doc. 42 at 7–8; Doc. 25 at 58–79.)

The matter is unopposed. (*See* Docket) Pursuant to the Standing Order Re Judicial Emergency (Doc. 13-1), Plaintiff's motion was taken under submission on the papers. (*See* Doc. 44.) On September 12, 2023, the parties consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Docs. 46–48.)

For the reasons explained below, the Court denies the renewed motion.

## I.        BACKGROUND

In the proposed second amended complaint (Doc. 25 at 58–79 ("SAC")),[1] Plaintiff alleges that she was employed by Defendants as an Occupational Therapist from November 19, 2016, to November 18, 2018, when she was unlawfully terminated. Plaintiff contends that during her employment, Defendants violated a number of aspects of the California Labor Code, by (1) failing to provide meal breaks, (2) failing to provide rest breaks, (3) failing to pay all wages due on termination, (4) failing to furnish accurate itemized wage statements, (5) failing to pay overtime, (6) failing to pay the minimum wage, (7) failing to indemnify employees for business expenses, and (8) violating the California Business and Professions Code. For those eight claims, Plaintiff brings both a class action and a representative action under California Private Attorneys General Act ("PAGA"), pursuant to California Labor Code § 2699.3. Plaintiff also brings three individual claims that allege unlawful retaliation under state law.

On August 3, 2021, Plaintiff filed a motion for preliminary approval of the class action settlement agreement and provisional certification. (Doc. 24.) Defendants did not file any opposition to the motion. On September 23, 2021, the Court noted Plaintiff's briefing was inadequate and ordered supplemental briefing. (Doc. 27 at 3 ("Here, the court lacks sufficient information to perform the required analysis.").) The order listed several examples of the types of issues the briefing did not address and highlighted several potential inadequacies in the settlement agreement. (*Id.* at 2–3.) It also directed Plaintiff to several recent "decisions that indicate the depth

---

[1] The motion requests leave to file the SAC. Because the Court is denying the motion, it is unclear whether Plaintiff will still want to file the SAC as the operative complaint in this action. Should Plaintiff seek to make that complaint operative, she shall seek leave to amend the complaint (either by stipulation or motion) <u>separately</u> and <u>prior to renewing any request for preliminary approval of class settlement and provisional certification.</u>

the court undertakes for this analysis" to point Plaintiff in the right direction. (*Id.* at 2 n.1.) On November 19, 2021, Plaintiff filed supplemental briefing limited only to the specific examples listed but stated she needed more time to determine the maximum value of her claims. (Doc. 35.) Plaintiff filed an addendum about the value of her claims on December 3, 2021. (Doc. 36.)

On January 10, 2022, the Court denied the motion for preliminary approval of the class action settlement agreement and provisional certification. (Doc. 38.) In so doing, the Court expressed "substantial concerns" with both the procedural and substantive fairness of the settlement agreement. (*Id.* at 7–15.) The Court also noted other deficiencies with the agreement, including problems with the class notice, a class definition that undermines the adequacy of representation by Plaintiff and the typicality of her claims, and the inclusion of an overly broad anti-suit injunction provision lacking in justification. (*Id.* at 15–17.)

## II.     THE PROPOSED AMENDED SETTLEMENT AGREEMENT

In response to the Court's concerns, the parties purportedly executed an amended settlement agreement ("Amended Agreement") on October 5, 2022.[2] (*See* Doc. 42 at 7, 8–12.) According to the motion, the Amended Agreement includes the following key provisions:

**A.     Class Definition**

For settlement purposes, the class is defined as "All persons who have worked for defendants Encompass Health Rehabilitation Hospital of Modesto, LLC and/or Encompass Health Corporation as non-exempt employees in the State of California at any time during the Class Period from January 31, 2015, to April 21, 2022." (Doc. 42 at 9.)

**B.     Settlement Fund**

The Amended Agreement provides for a $400,000 settlement for the class in exchange for a release, as described more fully below. (Doc. 42-1. Ex. A ¶ 1(z).) That $400,000 "is the maximum possible amount that may be paid by Defendants to resolve this Action, with the sole exception of (i) an additional payment to Plaintiff in the amount of [$50,000] in connection with

---

[2] The Court uses the term "purportedly" because the Amended Agreement has not been submitted to the Court. Plaintiff's counsel's declaration indicates that a "true and correct copy of the Amended Agreement is attached hereto as Exhibit A" (Doc. 42-1 ¶ 15), but what is attached is the original Agreement dated June 2021, which was the subject of the Court's previous order. (*Compare* Doc. 42-1, Ex. A *with* Doc. 25, Ex. 1.)

3

her separate individual settlement agreement and general release of all claims and (ii) certain additional tax payments to be made pursuant to Paragraph 20, subparagraph (h)." (Doc. 42 at 9.) Paragraph 20(h) of the Amended Agreement provides that "Defendants shall pay the employer's share of payroll taxes on all wages paid as part of this Settlement separate and apart from the Total Class Action Settlement Amount (*i.e.*, the employer's share of payroll taxes will not be deducted from the Total Class Action Settlement Amount)." (*Id*. at 9–10.)

**C.    Objections/Opt-Out Period**

The period for opting out or objecting to the settlement is "forty-five (45) days after the Notices are mailed to Class Members by the Settlement Administrator." (Doc. 42 at 9.)

**D.    Attorney's Fees**

Class Counsel may seek an award of attorney's fees of up to $100,000, to be paid from the settlement fund. (Doc. 42 at 10.)

**E.    Enhancement Award**

Plaintiff may seek an enhancement award of up to $12,000. (Doc. 42 at 25, 32. *See also* Doc. 42-1, Ex. A ¶ 18(c).)

**F.    Release of Claims**

As part of the settlement, the class members agree to release Defendants and their affiliates of the following:

> Any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities that have been asserted by Plaintiff, or the Class Members . . . in the Action, and any claims based on the factual predicates underlying the claims alleged in Plaintiff's Second Amended Complaint including, but not limited to: [specified claims].  Released Class Claims include all claimed or unclaimed . . . remedies available at law or equity allegedly owed or available to the Class based on the factual predicates underlying the claims alleged in the Second Amended Complaint against the Released Parties for the time period from January 31, 2015, up to and including April 21, 2022.

(Doc. 42 at 11–12.)

**G.    Anti-Suit Injunction**

The Amended Agreement requires Plaintiff to request a court order "[e]njoining the Class Representative and all Class Members from filing or prosecuting any claims . . . alleging claims

released by the Settlement unless such individuals have submitted valid Requests for Exclusion to the Settlement Administrator." (Doc. 42 at 12.)

### III.   LEGAL STANDARD

**A.   Rule 23 Settlements**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted).  To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate . . ."  Fed. R. Civ. P. 23(e)(2); *see also Bluetooth*, 654 F.3d at 946.  But when parties seek approval of a settlement agreement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632.  First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification.  *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).  Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members.  *Id.*  Third, the court holds a final fairness hearing to determine whether to approve the settlement.  *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010).

5

"In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). In considering whether "the relief provided for the class is adequate," the court must consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C); *see Briseño*, 998 F.3d at 1023–24.

Federal courts generally find preliminary approval of the settlement and notice to the proposed class appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Briseño*, 998 F.3d at 1027–28 ("The district court thus should give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense."). "The court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute.'" *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Rather, the court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Id.*

**B.     PAGA Settlements**

Under PAGA, an aggrieved employee[3] may bring an action for civil penalties for labor code

---

[3] An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). Accordingly, a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*; *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.").

The PAGA statute imposes limitations on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages or unpaid wages available privately through direct or class action claims. *Iskanian*, 59 Cal. 4th at 381; *ZB, N.A. v. Superior Ct.*, 8 Cal. 5th 175 (2019). Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must be divided 75 percent with the LWDA and 25 percent with the aggrieved employees. *Id.* § 2699(i). Finally, the proposed settlement must be submitted to the LWDA and a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(l)(2). Although there is no binding authority setting forth the proper standard of review for PAGA settlements, in the class action context where PAGA claims often appear, courts must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). The determination of fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *Officers for Just.*, 688 F.2d at 625.

The LWDA has also provided some guidance regarding court approval of PAGA

settlements. In a case where both class action and PAGA claims were covered by a proposed settlement, the LWDA stresses that

> when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Letter"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. July 29, 2016) (Doc. No. 736 at 2–3);[4] *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA Letter with approval).

Recognizing the distinct issues presented by class actions, the Court is persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA portion of the settlement now before the court. *See, e.g.*, *Tenorio v. Gallardo*, No. 1:1-cv-00283-DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sept. 30, 2019); *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019). Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.

## IV.   ANALYSIS

Before giving notice to the class, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This order focuses primarily on whether the Court will likely be able to approve the Amended Agreement under Rule 23(e)(2), in light of the deficiencies previously identified.

Under Rule 23(e)(2), a court may approve a class action settlement only if the settlement is a fair, reasonable, and adequate resolution of a bona fide dispute. *Bluetooth*, 654 F.3d at 946.

---

[4] In the LWDA Letter, the LWDA also stated that it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action."

1    "[P]reliminary approval of a settlement has both a procedural and substantive component."
2    *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dall. Cowboys Football*
3    *Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).  Preliminary approval of a settlement
4    and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the
5    product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the
6    range of possible approval, has no obvious deficiencies, and does not improperly grant preferential
7    treatment to class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enters.,*
8    *Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

**A.    Procedural Fairness**

In denying Plaintiff's original motion for preliminary settlement approval, the Court identified five facts that pointed to collusion.  (*See* Doc. 38 at 8–10.)  While Plaintiff has now addressed some of those concerns, *e.g.*, clarifying that pre-mediation discovery was not limited to Plaintiff's individual PAGA claims (see Doc. 42 at , others still persist.  While Plaintiff asserts that the Amended Agreement "removes the 'clear-sailing' arrangements whereby the parties agree 'not to oppose' others' actions" (Doc. 42 at 28), the provision whereby Defendants will not oppose Plaintiff's attorney's fee application, paragraph 18(a), appears to be left undisturbed. (*See* 42 at 10 (indicating the removal of the "clear-sailing" language in paragraphs 12, 18(b), 18(c), and 18(d)).) As previously observed, such a provision is problematic because it "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]"  *Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted); *accord Campbell v. Facebook, Inc*., 951 F.3d 1106, 1127 (9th Cir. 2020) ("The concern with a 'clear sailing' arrangement is that class counsel may have obtained too little for the class 'in exchange for red-carpet treatment on fees.'" (quoting *id.*)).

The Court also continues to be troubled by the sufficiency of information—or lack thereof—used to calculate the value of Plaintiff's claims.  Following the denial of the motion for preliminary approval of the settlement, Plaintiff propounded written discovery regarding her class claims, to which she received "newly produced data" from Defendants concerning meal break premiums.  (Doc. 42 at 14; Doc. 42-1 ¶ 8.)  The post-denial discovery also identified 16 new class

members. (*Id.*) One would expect the increase in class members to affect the value of all of Plaintiff's class claims, yet several of the current maximum-value calculations are the same as made before. (*See* Doc. 42 at 17–19; Doc. 42-1 ¶¶ 9–14.) Plaintiff does not explain these discrepancies, which underscore the Court's previously expressed concerns of collusion. Plaintiff's post-denial class discovery is of little value if it is not used to meaningfully evaluate the value of her claims, which does not appear to have been done.

**B.     Substantive Fairness**

   1.     Adequacy of Settlement Amount

According to Plaintiff, based on pre- and post-denial discovery, the maximum value of the class claims, in the aggregate, is $2,244,006. (Doc. 42 at 30.) Of that amount, $1,797,688 constitutes the maximum value of the derivative claims, i.e., claims for waiting-time penalties and inaccurate wage statements. (*Id.*) Plaintiff values the non-derivative claims at $446,318. (*Id.*) Thus, "the proposed settlement amount of $400,000 represents approximately 17.8% of the combined maximum value of all of the proposed class claims ($400,000 ÷ $2,244,006) and approximately 89.6% of the non-derivative proposed class claims ($400,000 ÷ $446,318)." (*Id.*)

As an initial matter, the Court questions the validity of the aggregate maximum-value calculation, considering that the discovery of additional class members did not result in a change in value of some of the class claims, as discussed above. But even were the Court to accept Plaintiff's calculation, she does little, if anything, to address the Court's concerns regarding the lack of justification for such a discounted settlement amount. Other than pointing to the general risk of losing in litigation the non-derivative claims, which do not require Plaintiff to prove willfulness, in pursuit of derivative claims that do require such proof (*see* Doc. 42 at 30), Plaintiff does not provide sufficient information to evaluate the strengths and weaknesses of her case. *See Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016). Plaintiff appears to assign almost no value to the derivative claims, but does not explain why. Courts, including this one, have required more. *See Borelli v. Black Diamond Aggregates, Inc.,* No. 2:14-CV-02093-KJM-KJN, 2021 WL 5139610, at *2 (E.D. Cal. Nov. 4, 2021) (requiring "a more searching analysis" of litigation risks before approving settlement where the amount class

members received 11 percent of total exposure); *Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings,* 2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions that the defendants might take, but they don't analyze those issues or evaluate the strength or weakness of defendants' positions.  A party moving for preliminary approval should cite case law and apply it to explain why each claim or defense in the case is more or less likely to prove meritorious.").

In addition, Plaintiff has not provided an estimate for the maximum potential PAGA penalties and has not included those penalties in the maximum potential recovery.  While the damages awarded under PAGA do not inure entirely to the benefit of the class, courts have held that the full amount of the awardable penalties should be considered in establishing the fairness of the settlement.  "Just because the State would receive [seventy-five percent of the penalty] doesn't mean it's not part of the penalty.  To the contrary, a PAGA plaintiff stands in the shoes of the State in enforcing its wage and hour laws." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 942 (9th Cir. 2016).  "[I]t makes no sense to simply erase the State's portion of the recovery when estimating the maximum value of the claim." *Id*.  The Court must also determine that the percentage of PAGA penalties provided for in the settlement is reasonable relative to the maximum PAGA penalties allowed. *See O'Connor*, 201 F. Supp. 3d at 1133–34.  The Court is unable to assess the adequacy of the settlement valuation without this information.

As the Court previously advised (*see* Doc. 38 at 10), to address whether a proposed settlement is substantively fair or adequate, courts must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware,* 484 F. Supp. 2d at 1080.  In the absence of an accurate valuation of Plaintiff's claims, the Court is again unable to balance the parties' proposed settlement against the expected recovery of those claims and therefore cannot find that the settlement is reasonable or "within the range of possible approval." *Id.* at 1079.

    2.    <u>Attorney's Fees</u>

Plaintiff has reduced her maximum request for attorney's fees from $120,000 to $100,000,

1 or 25% of the settlement fund and urges the Court to adopt the "percentage of the fund," instead of
2 the "lodestar," method for determining the reasonableness of the fees. (Doc. 42 at 31–32.)

3 The Ninth Circuit has recommended that district courts apply one method but "cross-check"
4 the appropriateness of the determined amount by employing the other as well. *See Bluetooth*, 654
5 F.3d at 944. Hence, even were the Court inclined to adopt the percentage of fund method, it should
6 still apply the lodestar method as a cross-check for reasonableness.

7 Once again, however, Plaintiff provides no lodestar cross-check. Moreover, despite the
8 reduction in the maximum fee amount, it is likely that such a cross-check would still render the fee
9 request excessive. Plaintiff's counsel represents, without substantiation, that he has spent "more
10 than 75 hours in relation to Plaintiff's proposed class claims." (Doc. 42-1 ¶ 21) But even one
11 hundred hours expended would yield a presumptively unreasonable hourly billable rate of $1,000.
12 Based on this record, the Court again finds it unlikely to grant the attorney's fees requested. (*See*
13 Doc. 38 at 13.)

14       3. <u>Enhancement Award</u>

15 Plaintiff again seeks up to $12,000 as an enhancement award. (Doc. 42 at 32.) The Court
16 previously observed that, given "the class-action case was an offshoot of [Plaintiff's] individual
17 claims and were opened and settled at the mediation," it "does not seem likely that she took many
18 actions or spent much time to protect the class's interests." (Doc. 38 at 14.)

19 In response, Plaintiff submits a declaration in support of her request, but it provides only a
20 general description of her role following the mediation. (*See* Doc. 42-2 ¶ 7 ("During mediation . .
21 . and afterwards, I took my potential role as a class representative seriously when analyzing the
22 class data with my attorney, carefully reviewing and asking questions about the draft settlement
23 documents, and ultimately agreeing to the proposed class settlement.").) The declaration also does
24 not indicate the amount of post-mediation time spent doing work on behalf of the class. Attached
25 to her declaration are orders issued by another federal court approving a prior class action settlement
26 in which Plaintiff was class representative (and for which she received a $20,000 enhancement
27 award) (Doc. 42-2, Exs. A & B), but these orders do nothing to substantiate the work that was done
28 by Plaintiff on behalf of the class in ***this*** case. Lacking in support, the Court cannot approve an

enhancement award of $12,000 at this time.

### 4. Release of Claims

The class release in the Amended Agreement has been changed from releasing claims that "reasonably flow from the facts alleged" in both the inoperative and operative complaints to releasing claims that are "based on the factual predicates underlying the claims alleged" in the only operative complaint. (Doc. 42 at 11–12.) Despite this change, however, the release still suffers from the same deficiency as the Court identified previously (*see* Doc. 38 at 15), in that it includes retaliation claims that Plaintiff brought on her own behalf, the value of which the class settlement apparently did not take into account. *See Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *12 (E.D. Cal. Sept. 13, 2018) ("overly broad release of claims that have not been litigated, alleged, or valued" on a class basis "is a deficiency that prevents the court from approving this settlement."). *See also Bond v. Ferguson Enters., Inc.,* No. 1:09-cv-01662 OWW MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement").

### 5. Anti-Suit Injunction

The Court previously instructed the parties that if they "intend to include [an anti-suit injunction provision] in the future, they will need to justify it." (Doc. 38 at 17 (citing 6 *Newberg on Class Actions* § 18:48 (5th ed.) (noting the problems with a judgment as a basis for an anti-suit injunction)).) Although the Amended Agreement limits the scope of the provision to enjoin those who **allege** the released claims (Doc. 42 at 23), again Plaintiff fails to offer any justification for the inclusion of such a provision in the first place. Moreover, considering the pertinent legal authority, the Court is disinclined to approve the provision. *See, e.g., Pedraza v. Pier 1 Imports U.S. Inc*, No. 816CV01447JLSDFM, 2017 WL 11617994, at *2 (C.D. Cal. Sept. 26, 2017) ("The leading treatise on class actions counsels against antisuit injunctions at the preliminary approval stage '[i]n all but very rare circumstances.' Besides the obvious legal hurdle of the Anti-Injunction Act's general prohibition on enjoining state proceedings, 'at the preliminary stage of a class action settlement, the court has not given notice to the class, not heard objections to the settlement, not weighed the settlement's strengths and weaknesses in an adversarial setting, and likely not finally certified a

1  class; in short, there is no final judgment.' And the treatise teaches that 'final approval of a class
2  action should rarely, if ever, trigger the need for an antisuit injunction' because 'preclusion is that
3  injunction.' In fact, a proposed antisuit injunction at the preliminary approval state 'raises a red
4  flag about whether the present settlement is a collusive suit aimed at foreclosing a stronger suit in
5  the collateral forum.' The proposed antisuit injunctions at the preliminary and final approval stages
6  must therefore be removed.") (quoting *Newberg on Class Actions* § 13:19 (5th ed.)) (internal
7  citations omitted).

### C.  Adequacy of Representative and Typicality of Claims

Finally, because the Court denies preliminary approval of the proposed settlement, it also declines to analyze whether Plaintiff has provided sufficient information to certify the class for settlement purposes. The Court also would be remiss if it did not reiterate its previously expressed concerns regarding the adequacy of Plaintiff to represent the class and the typicality of her claims, given the inconsistency between her allegations and the class definition, which remains substantively unchanged. (*See* Doc. 38 at 16–17 ("Plaintiff alleges that she and 'other similarly situated employees' were misclassified as exempt, salaried employees. However, the class definition includes all non-exempt employees. Thus, it appears that Plaintiff would not be a proper class representative as it currently stands.") (internal citations omitted).)

### V.  CONCLUSION AND ORDER

While mindful of the strong judicial policy favoring settlements, *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), the Court finds, for the reasons set forth above, it is unlikely to grant approval of the proposed settlement under Fed. R. Civ. P. 23(e)(2) without additional information and significant amendment. Accordingly, Plaintiff's renewed motion for preliminary approval of a class action settlement and provisional certification (Doc. 42) is DENIED, without prejudice.

IT IS SO ORDERED.

Dated:  **September 21, 2023**          /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE